# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF VALERA TACHIQUIN ALVARADO, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>JUSTIN TACKETT, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 13-CV-1202 W (JMA)<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION [DOC. 164]** |

Pending before the Court is Plaintiffs' motion for reconsideration of this Court's June 4, 2018 Order, which granted in part Defendant Tackett's motion for summary judgment. (*Mot. for Reconsideration* [Doc. 164][1]; *June 4, 2018 Order* [Doc. 155].) Tackett opposes. [Doc. 166.] The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **DENIES** the motion.

//
//

---

[1] Plaintiffs apply ex parte to replace their original points and authorities with a new version that corrects formatting errors. [Doc. 165.] Defendants do not oppose. The ex parte application is **GRANTED.**

1

## I. BACKGROUND

On May 20, 2013, Plaintiffs brought this action, which arises from the shooting death of Ms. Valeria Tachiquin on September 28, 2012 by Mr. Justin Tackett, a Customs and Border Protection ("CBP") Agent. (*Compl.* [Doc. 1]; *Second Amended Complaint ("SAC")* [Doc. 50].)

On June 4, 2018, the Court issued an order granting in part Tackett's motion for summary judgment. (*June 4, 2018 Order* [Doc. 155].)

Per the June 4 order, the undisputed facts were as follows. (*June 4, 2018 Order* [Doc. 155].) Tachiquin knew that CBP Agents Tackett and Roozen were law enforcement. These two agents tried to get Tachiquin's attention as she walked away from the apartment they were investigating, but she ignored them and got behind the wheel of a car—parked parallel with its windows rolled up. Tackett stood in front of the car, reading the license plate over the phone to CBP and blocking her exit from the parking space. Tachiquin maneuvered the car, impacting Tackett in the legs. Tackett gave two verbal warnings. Yet Tachiquin persisted in slowly hitting Tackett's legs with the car—a total of three times. Tackett instructed Roozen to break the car window in an attempt to arrest Tachiquin. (*See id.*)

Roozen broke the window. (*June 4, 2018 Order* [Doc. 155].) Tachiquin drove through Tackett at a high rate of speed, sending him onto the car's hood and buckling its windshield. Tachiquin carried Tackett on the hood for 773 feet, swerving around traffic into the wrong-way lane of a public road and ignoring his commands to stop. Tachiquin turned the car onto another street. Tackett slid off the hood, firing ten shots and killing Tachiquin. An autopsy revealed that Tachiquin was under the influence of methamphetamine at the time. (*Id.*)

Per Mullenix v. Luna, 136 S. Ct. 305 (2015), and Kisela v. Hughes, 138 S. Ct. 1148 (2018), the Court moved directly to the second prong of the qualified immunity analysis and held that Tackett violated no clearly established Fourth or Fifth Amendment

rights by using lethal force under these circumstances. (*June 4, 2018 Order* [Doc. 155].) As the Court reasoned:

> **By the time Agent Tackett fatally shot Tachiquin, he had been impacted by a car with so much force as to propel him onto the hood of the accelerating vehicle, damaging the windshield. (*Tackett Depo.* [Doc. 122-7, Exh. E] 310–11; *Haag Expert Report* [Doc. 122-23, Exh. T] 19.) He stayed on the hood as the car accelerated into the road and around Mr. Vargas' automobile, driving the wrong way into the oncoming traffic lane. (*Tackett Depo.* [Doc. 122-7, Exh. E] 314–317; *Roozen Depo.* [Doc. 122-10, Exh. H] 76–84; *Vargas Depo.* [Doc. 122-19, Exh. Q] 30–35.) Tachiquin ignored his commands to stop as he gripped the sides of hood, struggling to maintain his balance. (*Hoyos Depo.* [Doc. 122-18, Exh. P] 32; *Tackett Depo.* [Doc. 122-7, Exh. E] 314; *Vargas Depo.* [Doc. 122-19, Exh. Q] 33–34.) When it finally came to a stop 773 feet away (*Joint Statement of Undisputed Facts* [Doc. 142] ¶ 8), Tackett was faced with a split-second decision as to how to prevent the driver—who had already proven she was willing to endanger his life—from running him over. His decision to use lethal force was not plain incompetence or knowing violation of the law. See Mullenix, 136 S. Ct. at 308.**

(*Id.*)

Plaintiffs now move for reconsideration without analysis per the appropriate legal standard. (*Pls.' Mot.* [Doc. 165-1, Exh. 1].) For the reasons that follow, the motion must be denied.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 60(a) allows a Court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "Substantive changes of mind by a court cannot be effected through Rule 60(a)." Buchanan v. United States, 755 F. Supp. 319, 324 (D. Or. 1990) (citing Miller v. Transamerican Press, Inc.*,* 709 F.2d 524, 527 (9th Cir. 1983). However, "[a] court's failure to memorialize part of its decision . . . is a clerical error." Id. at 324; see also Blanton v. Anzalone, 813 F.2d 1574, 1577 n.2 (9th Cir. 1987). Furthermore, "Rule 60(a) can be used to conform a judgment to a prior ruling." Buchanan, 755 F. Supp. at 324.

There are two ways by which a party may seek substantive reconsideration of an order on a motion for summary judgment: (1) Federal Rule of Civil Procedure 59(e)

3

(motion to alter or amend a judgment), or (2) Federal Rule of Civil Procedure 60(b) (motion for relief from judgment). See Hinton v. Pac. Enter., 5 F.3d 391, 395 (9th Cir. 1993).

"Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation omitted). "Indeed, 'a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.' " Id. (quoting 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999)). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Id. (emphasis omitted). It does not give parties a second bite at the apple. See id. "[A]fter thoughts or shifting of ground do not constitute an appropriate basis for reconsideration. Ausmus v. Lexington Ins. Co., No. 08-CV-2342-L, 2009 WL 2058549, at *2 (S.D. Cal. July 15, 2009) (Lorenz, J.) (internal quotation omitted).

Rule 60(b) provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances. Engleson v. Burlington N.R. Co., 972 F.2d 1038, 1044 (9th Cir. 1992) (citing Ben Sager Chem. Int'l v. E. Targosz & Co., 560 F.2d 805, 809 (7th Cir. 1977)). Under Rule 60(b), the court may grant reconsideration based on: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud, misrepresentation, or misconduct by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason justifying relief. Fed. R. Civ. P. 60(b). The last prong is "used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an

4

erroneous judgment." Delay v. Gordon, 475 F.3d 1039, 1044 (9th Cir. 2007) (internal quotations omitted).

### III. DISCUSSION

#### A. There is No Genuine Dispute the Car Impacted Tackett.

Plaintiffs contend that "[c]ircumstantial [e]vidence [s]upports the [r]easonable [i]nference that Tackett [j]umped [o]nto the [d]eparting [c]ar." (*Pls.' Mot.* [Doc. 165-1, Exh. 1] 8:4–12:10.)

Plaintiffs made this argument before. (*Tackett MSJ Opp'n* [Doc. 132] 6:10–22; 20:8–25.) The Court analyzed and rejected it. (*June 4, 2018 Order* [Doc. 155] 5 n.2.) As the Court reasoned:

> **Plaintiffs further argue that Tackett's testimony that he could not remember suffering any abrasions, broken bones, or bruises on his legs is itself sufficient to create a genuine dispute as to whether Tackett leaped onto the car. (*Pls.' Disputed Facts* [Doc. 142] ¶ 12; *Tackett Depo.* [Doc. 122-7, Exh. E] 286–312.) It is not. Tackett testified that after the incident he "complained of pain in his left side, which consisted of [his] leg[,]" but that he couldn't recall if he specifically complained of leg pain. (*Tackett Depo.* [Doc. 122-7, Exh. E].) He further testified that he suffered internal bleeding after the incident. (*Tackett Depo.* [Doc. 122-7, Exh. E] 288–289.) Without more, the Court cannot draw the inference that these injuries were inconsistent with the impact Tackett and Roozen testified to witnessing—especially if the car started out in close proximity to Tackett's body. Both Roozen and Tackett testified, in no uncertain terms: (1) that the car struck Tackett; and (2) that Tackett did not jump onto the car. (*Tackett Depo.* [Doc. 122-4, Exh. E] 308; *Roozen Depo.* [Doc. 122-10, Exh. H] 76.) Plaintiffs provide nothing that could rise to a genuine dispute as to this point.**

(*Id.*)

Plaintiffs now contend that the Court inappropriately "relie[d] on the testimony of Tackett, whose record for lying regarding his encounters with citizens is well[-]documented." (*Pls.' Mot.* [Doc. 165-1, Exh. 1] 8:6–9.)

Credibility determinations are inappropriate in ruling on a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court is tasked with determining whether any reasonable jury could return a verdict for the

nonmoving party, making all inferences in that party's favor. See id.; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–88 (1986).

As the original analysis made clear, drawing all inferences in Plaintiffs' favor, there is nothing to show that Tackett leaped onto Tachiquin's car. The undisputed evidence shows that the car hit Tackett. In the instant motion for reconsideration, Plaintiffs repeat their argument that Tackett was uninjured, and that he would have suffered injuries had he been hit. (*Pls.' Mot.* [Doc. 165-1, Exh. 1] 11:5–18.) The evidence belies this contention.

Tackett testified that following the incident he complained of "pain in [his] left side, which consisted of [his] leg." (*Tackett Depo.* [Doc. 122-7, Exh. E] 288–89.) He testified that he suffered "internal bleeding" and "[b]owel movement bleeding" following the impact with Tachiquin's car, but that he did not remember bruises and could not remember whether he had marks on his legs. (*Id.*) Plaintiffs suggest—for the first time upon the instant motion for reconsideration—that Tackett's bleeding stemmed from a preexisting condition. (*Pls.' Mot.* [Doc. 165-1, Exh. 1] 11 n.3) They represent that he "believed that this was from an 'ulcer.' " (*Id.* (quoting *Tackett Depo.* [Doc. 122-7, Exh. E] 289).) This is misleading.

The ulcer comment in Tackett's deposition was in response to a question about a health issue Tackett had suffered years ago, during his time with the Imperial County Sheriff's Department. Tackett's tenure with that department ended in 2003—about nine years before the incident in question. (*Tackett MSJ Opp'n* [Doc. 132] 11.) Contrary to Plaintiffs' suggestion, Tackett explicitly testified that the Tachiquin incident caused him to suffer internal bleeding:

**Q: Now, did you sustain any injuries from the event?**
**A: I did.**
**Q: Any injuries that caused bleeding?**
**A: Yes.**
**Q: What?**

6

> **A: Due to the pills that I'm taking, it's caused internal bleeding. Bowel movement bleeding.**
>
> **Q: Bloody stools?**
>
> **A: Correct.**
>
> **Q: Let me ask you, did your case with Imperial [C]ounty, did that cause you to have bloody stools as well?**
>
> **A: I believe it [sic] did have an ulcer that causes blood.**

(*Tackett Depo.* [Doc. 122-7, Exh. E] 289.) It is unclear what, if any, relationship this previous ulcer has with the injury Tackett testified to in this case. If Plaintiffs wanted to make an argument about this, the time for doing so was in opposition to the motion for summary judgment. They chose not to. (*Tackett MSJ Opp'n* [Doc. 132].)

There is evidence Tackett suffered injuries. Nothing shows he leaped onto the car from off the bumper—the position at which Plaintiffs contend he was blocking Tachiquin's exit from the parking space.[2]

There is no newly discovered evidence. There has been no intervening change in controlling law. Plaintiffs do not show the Court's decision on this point to be clear error. See Fed. R. Civ. P. 59(e); Kona Enters, 229 F.3d at 890. And there are no extraordinary circumstances that could justify invoking Rule 60(b).

### B. Plaintiffs Conceded that Tackett Was Not Seized Prior to the Seizure.

This Court's June 4, 2018 order held the following as to Plaintiffs' claims alleging a pre-shooting seizure by Agent Tackett:

//

---

[2] Plaintiffs now argue that Tackett was "at the side front quarter panel of the car when [Tachiquin] fled the area[,]" and that an impact "would have pushed him away from the car as it came out from the parking spot, not into the hood." (*Pls.' Mot.* [Doc. 165-1, Exh. 1] 11:19–12:4.) This is a new theory, appearing for the first time in this motion. (*See, e.g.*, *Pls.' Opp'n* [Doc. 132] 4:9 ("Tackett positioned himself in front of [Tachiquin's] car.").) A motion for reconsideration should not serve as a fresh opportunity for attorneys to use new ideas to litigate previously decided issues.

> **The Court held in its April 27, 2015 order that Defendant Roozen did not seize Tachiquin during their encounter prior to the shooting.** (*Apr. 27, 2015 Order* [Doc. 103] 11–12.) **In reversing this Court's decision on a separate issue as to Defendant Shavatt, the Ninth Circuit held that "[t]o the extent that Plaintiffs frame their claim as a challenge to the pre-shooting seizure of Tachiquin, that argument fails because they have not adequately alleged that a pre-shooting seizure occurred."** (*Ninth Cir. Memo. Opinion* [Doc. 115] 3.) **Plaintiffs have not subsequently amended the operative SAC.**
>
> **Tackett argues that the same reasoning as to the failure to properly allege a pre-shooting seizure should apply to him, and that as a result, he is entitled to summary judgment on the first through fifth causes of action.** (*Tackett MSJ* [Doc. 122-1] 1:22–2:11.) **The argument is very brief. It appears in the motion's introduction. But Plaintiffs do not address it anywhere in their opposition.** (*Tackett MSJ Opp'n* [Doc. 132].) **As such, Plaintiffs appear to concede the merits of the argument and acquiesce in summary judgment as to the first five claims against Agent Tackett—all of which explicitly allege pre-shooting seizures in violation of the Fourth Amendment.** (*SAC* [Doc. 50] ¶¶ 185–212.) **Indeed, the first four of these causes of action are the very same the Court previously dismissed as against Agent Roozen.** (*Id.* [Doc. 50] ¶¶ 185–205; *Apr. 27, 2015 Order* [Doc. 103] 10–13, 20.) **The fifth alleges a violation of the Fourth Amendment through Tackett "jump[ing] onto the hood of [Tachiquin's] car[.]"[]** (*SAC* [Doc. 50] ¶¶ 206–212.)
>
> **Consistent with the Court's reasoning in April of 2015 and the Ninth Circuit's reasoning in March of 2017, there is no genuine dispute that Tachiquin was never seized prior to the shooting.** (*Apr. 27, 2015 Order* [Doc. 103] 10–13, 20; *Ninth Cir. Memo. Opinion* [Doc. 115] 3.)
>
> **Defendant Tackett's motion for summary judgment on Plaintiffs' first through fifth causes of action will be granted.**

(*June 4, 2018 Order* [Doc. 155] 10:10–11:10.) Now, construing their previous failure to oppose this portion of Tackett's motion as inadvertence, Plaintiffs devote about two pages to a new argument that did not appear in their opposition. (*Pls.' Mot.* [Doc. 165-1, Exh. 1] 2:20–3:5 ("Plaintiffs did not intend, and do not concede, that [Tachiquin] was not the subject of a pre-shooting seizure."); 15:14–17:28.) It does not matter that Plaintiffs

8

did not intend to omit the relevant passage from their brief. They did. They had the burden at that point,[3] and they did not meet it.

There is no newly discovered evidence. There has been no intervening change in controlling law. The Court's decision is not clear error. See Fed. R. Civ. P. 59; Kona Enters, 229 F.3d at 890. And there are no extraordinary circumstances that could justify invoking Rule 60(b).

### C. Plaintiffs Fail to Show Newly Discovered Evidence, Intervening Change in Controlling Law, Clear Error, or Extraordinary Circumstances.

The remainder of the motion is an attempt to relitigate the motion for summary judgment. There is no newly discovered evidence. There has been no intervening change in controlling law. The Court's decision is not clear error. See Fed. R. Civ. P. 59; Kona Enters, 229 F.3d at 890. And there are no extraordinary circumstances that could justify invoking Rule 60(b).

//
//
//
//
//
//
//
//
//
//

---

[3] If the moving party meets its initial burden of production on the motion for summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56).

IV. **CONCLUSION & ORDER**

Plaintiffs' motion for reconsideration is **DENIED**. [Doc. 164.]

**IT IS SO ORDERED.**

Dated: September 4, 2018

Hon. Thomas J. Whelan
United States District Judge